IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

DAVID D. COX,                          )
                                       )
                Plaintiff,             )
                                       )
                                       )
v.                                     )        No. 3:06-CV-250
                                       )
RONALD REAGAN, *et al.*,               )
                                       )
                Defendants.            )

## <u>MEMORANDUM OPINION</u>

This civil action is before the court for consideration of the motion for

summary judgment filed by defendants City of Alcoa and Chief Ken Burge [doc. 43], the

motion for summary judgment filed by defendants City of Maryville and Chief Tony Crisp

[doc. 41], the motion for summary judgment filed by defendants Ronald Reagan and Sheriff

James Berrong in their official capacities and Blount County, Tennessee [doc. 100], and the

motion for summary for summary judgment filed by defendant Ronald Reagan in his

individual capacity [doc. 93].[1]   Plaintiff has filed *pro se* a response to the motion filed the

City of Alcoa and Chief Burge, and those defendants have submitted a reply [doc. 91].

Plaintiff has not filed a response to the motion filed by the Blount County Official defendants

or the motion filed by Ronald Reagan in his individual capacity.  Plaintiff has filed a motion

---

[1] On March 30, 2009, the court granted motions for partial summary judgment filed by
defendant Ronald Reagan in his individual capacity and Ronald Reagan and James Berrong in their
official capacities and Blount County, Tennessee [docs. 89, 90].  The court's opinion and order
dismissed plaintiff's claims alleging that he was arrested without probable cause and that he was
denied due process as to these defendants.

[doc. 88] seeking permission to file out of time a response to the motion for summary judgment filed by the City of Maryville and Chief Crisp.

Oral argument is not necessary, and the motions are ripe for the court's determination. For the reasons stated herein, all of the motions will be granted, and this case will be dismissed.

## I.

*Background* [2]

Plaintiff states in an affidavit that in the early morning hours of June 25, 2005, he was returning from work in his car. At West Howe Street he backed his vehicle into a driveway. He says his vehicle was located ten to fifteen yards off of West Howe Street. Two Blount County Sheriff's patrol cars then pulled in front of the driveway. Plaintiff states he had exited his vehicle. Officer Ronald Reagan and Officer Jeff Ledford asked him to identify himself and if he had any ID. According to plaintiff, he gave them his ID after he was harassed and intimidated by the officers. After Officer Ledford checked the status of plaintiff's driver's license, the officer told him that there were outstanding warrants out of Knoxville, Tennessee, against him. Plaintiff contends that at no time during this incident was there any mention of any traffic violation which Officers Reagan and Ledford claim they

---

[2] Some of the facts recited and documentation supporting them are taken from the motions for partial summary judgment and the court's opinion addressing them that was entered March 30, 2009 [doc. 89].

2

saw. Plaintiff further states that he was arrested for the warrants out of Knoxville that did not exist and he was never questioned or cited for the traffic violation.[3]

The sworn affidavit of Officer Ronald Reagan tells a somewhat different story. Officer Reagan states that in the early morning of June 25, 2005, he and Blount County Deputy Sheriff Jeff Ledford were in their respective police vehicles which were stationary at an intersection in Alcoa, Tennessee. They observed the plaintiff make an illegal turn in his motor vehicle and then park at a residence. Officer Reagan and Deputy Ledford proceeded to plaintiff's vehicle, which he had exited. Plaintiff produced his driver's license as requested by Deputy Ledford who proceeded to check the status of the license. Plaintiff's license had been revoked. Officer Reagan then placed plaintiff under arrest for operating a motor vehicle on a revoked license in violation of Tenn. Code Ann. § 55-50-505.

Officer Reagan testified by affidavits that plaintiff did not comply with the request to open his hands during the arrest. Officer Reagan stated in his affidavit that when he told plaintiff he was under arrest and started to handcuff plaintiff, plaintiff put his right hand in his pocket and removed it with his hand in a fist. Officer Reagan twice asked plaintiff to open his hand and warned him he would be stunned with a taser if he did not comply. When plaintiff would not comply with the verbal commands to open his hand, a taser was used between his shoulder blades and he fell back on top of Officer Reagan.

---

[3] The court observes that plaintiff's version of the facts in his affidavit varies to some degree from the verison recited in the complaint.

Officer Reagan further testified that while he continued to struggle with plaintiff to get him to open his hand, a crowd began to gather. Officer Ledford became involved in crowd control and could not help Officer Reagan with plaintiff. Officer Reagan stated that in the continued struggle with plaintiff he employed his taser to get plaintiff to open his hand, but he still refused. Plaintiff's sister, Beverly Bowman, was on the scene and tried to get plaintiff to open his hand, but plaintiff still refused.

Also according to Officer Reagan, backup officers arrived on the scene. Sergeant Doug Moore form the Blount County Sheriff's Office instructed plaintiff to open his hand several times, but plaintiff still refused. Officer Reagan stated that with the assistance of Sergeant Moore, he was able to open plaintiff's hand. In it he found marijuana, crack cocaine, and a twenty-dollar bill.

Officer Reagan charged plaintiff with possession of a Schedule VI controlled substance in violation of Tenn. Code Ann. § 39-17-418, possession of a Scheduled II controlled substance in violation of Tenn. Code Ann. § 39-17-417, and operation of a motor vehicle while his license was revoked in violation of Tenn. Code Ann. § 55-50-505. Plaintiff later pled guilty to and was convicted of each of the state charges for which he was arrested.

Plaintiff says that other officers on the scene just watched while he was being assaulted. He also says that a female officer from Alcoa was holding his legs while he was being tased. He testified in deposition that he does not know how the officers ultimately got his hand open because he lost consciousness during the tasing. Plaintiff was taken to the

4

emergency room of Blount Memorial Hospital by a Blount County officer where he was treated and released and then brought to the Blount County jail. Plaintiff testified that the officer "jerked" him out of the car at the hospital. He said that an ambulance was called, but he was taken to the hospital by an officer. After plaintiff was released on bond, the Blount County Sheriff's Office notified plaintiff's mother that the hospital wanted plaintiff to return for further treatment on his wrist. Plaintiff testified in deposition that his wrist was broken. No medical records have been provided.

Plaintiff's blood work from his hospital treatment showed positive for cocaine and cannabis [marijuana]. In deposition testimony, plaintiff admitted that on his way home from work and before the subject incident occurred, he purchased and then ingested drugs, both cocaine and marijuana. Plaintiff testified as follows:

> Q.     So the marijuana and the cocaine that you had in your fist was (sic) new drugs?
>
> A.     It was - - yes.
>
> Q.     Did you ingest any drugs between the time you left your employment at Pigeon Forge and the time you arrived at that residence on Howe Street in Alcoa?
>
> A.     Yes, I did.
>
> Q.     Which of the drugs did you ingest?
>
> A.     A combination of both.
>
> Q.     How did you go about doing that?
>
> A.     I mean I just put - - sprinkled some of the drugs in a

5

rolling paper and rolled it up and smoked it.

Q.     You sprinkled some of the cocaine on the marijuana - -

A.     Exactly.

Q.     - - and rolled it up in a handmade cigarette; is that correct?

A.     That's correct.

Q.     And you smoked it?

A.     That's correct.

Assistant Chief Deputy James B. Long of the Blount County Sheriff's Office testified by affidavit that at the time of the subject incident the Sheriff's Office had in place policies titled "Disposition of Arrestees," "Force Continuum," "Taser," and attached copies to his affidavit.   Chief Long also testified that after the incident plaintiff filed a citizen's complaint concerning his arrest.   In the complaint, plaintiff states that he complied with all of the officer's requests except opening his hand, "which [he] could not do because the hand cuffs were too tight."  Chief Long was in charge of the complaint and delegated investigation of the complaint to Lieutenant Pat England.  Lieutenant England interviewed witnesses who were present when plaintiff was arrested, including plaintiff's sister.  Lieutenant England questioned them about an officer instructing plaintiff to open his hand and plaintiff's refusal to do so.

6

Chief Long stated that based upon the results of Lieutenant England's investigation, he determined that plaintiff had placed Officers Reagan and Ledford in danger as well as himself by not cooperating with the officers. Chief Long concluded that Officer Reagan was justified in the action he took. Chief Long's affidavit also sets out the training standards and requirements for officers in the Blount County Sheriff's Office.

## II.

### *Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party may discharge its burden by demonstrating that the non-moving party has failed to establish an essential element of that party's case for which he or she bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party need not support its motion with affidavits or other materials negating the opponent's claim. *Id.* at 323. Although the moving party has the initial burden, that burden may be discharged by a "showing" to the district court that there is an absence of evidence in support of the non-moving party's case. *Id.* at 325 (emphasis in original).

7

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

III.

*Analysis*

A. <u>City of Maryville and Chief Crisp's<br>Motion for Summary Judgment</u>

Initially, the court must address plaintiff's "Motion to Submit Opposition to Defendants City of Maryville and Chief Tony Crisp Motion for Summary Judgment Out of Time" [doc. 88]. Plaintiff's stated reason for needing an extension is: "due to being overwhelmed and various personal issues, Plaintiff was unable to complete said response

8

timely." The problem with plaintiff's request is that plaintiff has been given multiple extensions of time to respond to this and other motions. In addition, the record clearly reflects that plaintiff has been given trial continuances and multiple opportunities to obtain counsel. The reasons given for the currently requested extension are insufficient, and the court will deny plaintiff's motion. Nevertheless, the court has reviewed plaintiff's opposition brief, and even if it were permitted to be filed, the court would still grant summary judgment to the City of Maryville and Chief Crisp for the reasons set forth below.

Plaintiff alleges in paragraphs 11-13 of the complaint brought pursuant to 42 U.S.C. § 1983 that:

> 11. Defendant(s) "Unnamed, Unknown Officer(s) of the Maryville Police Department" is a/are (sic) police officer(s) employed by the City of Maryville, Tennessee. This/these Defendant(s) is/are sued individually and in his/her/their official capacity.
>
> 12. Defendant Tony Crisp is the duly appointed Chief of Police of the City of Maryville, Tennessee, and the supervisor of defendant(s) John and/or Jane Does(s). This Defendant is sued solely in his official capacity.
>
> 13. Defendant City of Maryville, Tennessee, is a government entity organized and existing pursuant to the laws of the State of Tennessee.

Chief Crisp has been sued in his official capacity only. With regard to official capacity claims, "suing a municipal officer in his official capacity for a constitutional violation pursuant to 42 U.S.C. § 1983 is the same as suing the municipality itself." *Kraemer v. Luttrell*, 189 F. App'x 361, 366 (6th Cir. 2006). "[O]fficial capacity suits

9

generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quotation marks and citation omitted). Thus, the suit against Chief Crisp in his official capacity is a suit against the City of Maryville, Tennessee, a defendant in this lawsuit. There is no reason to maintain the official capacity suit against Chief Crisp, and summary judgment on this claim will be granted.

As to the City of Maryville, no basis for municipal liability exists. Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), municipal "liability is limited to situations in which the deprivation of constitutional rights results from an official policy or custom of the [city]." *Petty v. County of Franklin*, 478 F.3d 341, 347 (6th Cir. 2007). To establish liability against the City of Maryville, plaintiff has to prove (1) that a constitutional violation occurred and (2) that the city is responsible for that violation. *Graham v. County of Washtenaw*, 358 F.3d 377, 382 (6th Cir. 2004). Plaintiff herein goes no further than making allegations in the complaint about an alleged policy or custom on the part of the City of Maryville concerning improper training and supervision.

The City of Maryville supported its summary judgment motion with an affidavit addressing officer training. Plaintiff does not even address this evidence and presents no evidence of a policy or custom that "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992) (citing *City of Canton v. Harris*, 489 U.S. 378, 388-89

(1989)). When faced with a summary judgment motion, "the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Johnson v. City of Cincinnati*, 119 F. Supp. 2d 735, 739 (S.D. Ohio 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)). Plaintiff has not done that. Summary judgment as to the City of Maryville is appropriate.

In any event, municipal liability against the City of Maryville also cannot exist because no individual officers from the City of Maryville are parties to this lawsuit. Thus, there are no Maryville officers who could have violated plaintiff's constitutional rights. The complaint does nothing more than refer to "Unnamed, Unknown" officers, and this is insufficient. An action cannot be commenced against fictitious parties. *Bufalino v. Michigan Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968) (action against Doe defendants never commenced because they were not identified nor served with process); *accord Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996). "Substituting a named defendant for a 'John Doe' defendant is considered a change in parties, not a mere substitution of parties." *Id.* at 240. "[U]ntil an amendment adding additional defendants has been permitted by the court, the John Doe allegations are merely 'surplusage'. . . ." *Dunn v. Paducah Int'l Raceway*, 599 F. Supp. 612, 613 n.1 (W.D. Ky. 1984) (citing *Hannah v. Majors*, 35 F.R.D. 179, 180 (W.D. Mo. 1964)). The alleged unknown defendant officers from the City of Maryville have not been properly brought into this lawsuit. Therefore, there are no individual officers from the

11

City of Maryville who could have acted to violate plaintiff's civil rights.

"A municipality may be liable for a constitutional violation by individuals when those individuals acted pursuant to an official policy of the municipality." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 679 (6th Cir. 2005) (citing *Monnell,* 436 U.S. at 691). However, in order for municipal liability to exist, a constitutional violation has to occur. *Voyticky*, 412 F.3d at 679 (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)); *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001)("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983."); *see also Bukowski v. City of Akron*, 326 F.3d 702, 712-13 (6th Cir. 2003) ("[T]he determination that the City's officials did not violate the plaintiffs' constitutional rights resolves the claim against the City as well.") (citing *Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir. 2000) (where the court noted  that the "conclusion that no officer-defendant had deprived the plaintiff of any constitutional right a fortiori defeats the claim against the County as well")).

There is no constitutional claim that can go forward as to any individual defendant from the City of Maryville.  Accordingly, this provides a second basis on which the City of Maryville is entitled to summary judgment.

In addition, the court at this time will dismiss the unnamed and unknown defendants identified in the complaint.  These unknown defendants have not been served with process within 120 days of the filing of the complaint on June 23, 2006.   Rule 4(m)

provides in pertinent part:

> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

There is no showing that plaintiff has obtained service of process on any of the unknown officer defendants, and more than 120 days have passed since the filing of the complaint. Failure to effect service of process on unknown defendants within the 120 days as required by Rule 4(m) can be grounds for dismissing such defendants. *Doughty v. City of Vermillion*, 118 F. Supp. 2d 819, 821 n.1 (N.D. Ohio 1999) (failure to complete service of process on John Doe defendants within 120 days an additional reason for dismissing those defendants); *Cox v. Lawson,* No. CIV.A. 397CV-678-S, 1998 WL 34078441 (W.D. Ky. Dec. 18, 1998) (failure to show good cause for not meeting service requirements of Rule 4(m) grounds for dismissing "Unknown Defendants"); *Collins v. IRS,* No. 1:94-CV-685, 1995 WL 545285 (N.D. Ohio May 26, 1995) (failure to obtain service on John/Jane Doe defendants in accordance with Rule 4(m) grounds for dismissal of those defendants). Accordingly, the unknown officer defendants from the City of Maryville will be dismissed from this civil action.

While plaintiff has made no effort to amend the complaint and bring in named officers from the City of Maryville, the court points out that any such effort would be futile. As noted above, substituting a named defendant for an unknown defendant is a change in parties not a substitution of parties. Tennessee has a one year statute of limitations for actions brought under federal civil rights statutes, including § 1983. *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003) (citing Tenn. Code Ann. § 28-3-104(a)(3); *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986)).

The events that precipitated this lawsuit occurred on or about June 25, 2005; thus, the statute of limitations for the § 1983 claims ran on or about June 25, 2006. Once the statute of limitations has run, Federal Rule of Civil Procedure 15 allows the substitution of parties to correct a mistake in identity, but it does not allow the addition of new parties. *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996).

> It is well established that the "mistaken identity" requirement is not satisfied "where the caption of an original complaint refers to 'unknown police officers' and, after expiration of the applicable limitation period, an amended complaint specifically names those officers." *Force v. City of Memphis*, No. 95-6333, 1996 WL 665609, at *3 (6th Cir. Nov. 14, 1996) (citing *Cox*, 75 F.3d at 240). This is so because "a plaintiff's lack of knowledge pertaining to an intended defendant's identity does not constitute a 'mistake concerning the party's identity' within the meaning of Rule 15(c)." *Moore v. Tennessee*, 267 F. App'x 450, 455 (6th Cir. 2008) (citing *Cox*, 75 F.3d at 240).

*Keene v. Justice*, No. 07-250, 2009 WL 649159, at *1 (E.D. Ky. Mar. 10, 2009). Even if plaintiff were now to discover the identity of any of the City of Maryville officers he refers

14

to in his affidavit, any effort to amend his complaint and bring them into the lawsuit would be futile. Therefore, plaintiff's contention that discovery is incomplete is of no significance.

Accordingly, summary judgment will be granted to the City of Maryville and Chief Crisp. The unknown, unnamed City of Maryville officers will be dismissed.

### B. City of Alcoa and Chief Burge's
### Motion for Summary Judgment

Plaintiffs alleges the following in paragraphs 8-10 of the complaint regarding the City of Alcoa and Chief Burge:

> 8. Defendant(s) "Unnamed, Unknown Officer(s) of the Alcoa Police Department is a/are (sic) police officer(s) employed by the City of Alcoa, Tennessee. This/these Defendant(s) is/are sued individually and in his/her/their official capacity.

> 9. Defendant Ken Burge is the duly appointed Chief of Police of the City of Alcoa, Tennessee, and the supervisor of defendant(s) John and/or Jane Doe(s). This Defendant is sued solely in his official capacity.

> 10. Defendant City of Alcoa, Tennessee, is a government entity organized and existing pursuant to the laws of the State of Tennessee.

The court's analysis of the motion for summary judgment filed by the City of Alcoa and Chief Burge is identical to that employed in the motion filed on behalf of the City of Maryville and Chief Crisp. Initially, for the reasons set forth above, all of the unknown, unnamed officers will be dismissed. Also, for the reasons presented as to Chief Crisp,

15

summary judgment will be granted as to Chief Burge. He is sued solely in his official capacity, and therefore a suit against him is a suit against the City of Alcoa. *Kraemer*, 189 F. App'x at 366.

With regard to municipal liability against the City of Alcoa, plaintiff has not presented any proof to sustain such a claim. As with the City of Maryville, plaintiff has no individual officers from the City of Alcoa in this lawsuit who could have violated his constitutional rights. If no constitutional violation by individual defendants is shown, the municipal defendant cannot be liable under § 1983. *Watkins*, 273 F.3d at 687. In addition, plaintiff has presented no proof of any custom or policy on the part of the City of Alcoa that can be linked to plaintiff's alleged constitutional violations. His response to the motion does not address this issue, and no proof is presented. As noted above, in responding to a motion for summary judgment, a nonmoving party cannot rely on the pleadings but must present affirmative evidence. *Johnson*, 119 F. Supp. 2d at 739; *Liberty Lobby*, 477 U.S. at 257.

Accordingly, summary judgment will granted to the City of Alcoa and Chief Burge. The unknown, unnamed City of Alcoa officers will be dismissed.

## C. Officer Reagan in His Individual Capacity
## Motion for Summary Judgment

As referenced above, plaintiff has not submitted a response to this motion for summary judgment. However, "a district court cannot grant summary judgment in favor of

16

a movant simply because the adverse party has not responded." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991); *see also Stough v. Mayville Cmty. Sch.*, 138 F.3d 612 (6th Cir. 1998). At a minimum, the court must examine the motion and determine whether the movant has met the initial burden of demonstrating the absence of a genuine issue of material fact. *Carver*, 946 F.2d at 455. The court has performed this examination.

Officer Reagan asserts that he is entitled to qualified immunity. Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "This immunity shields officials 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Perez v. Oakland County*, 466 F.3d 416, 426 (6th Cir. 2006) (quoting *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005)). Plaintiff has the burden of demonstrating that defendants are not entitled to qualified immunity. *See v. City of Elyria*, 502 F.3d 484, 491 (6th Cir. 2007) (citing *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991)). The court notes that in not responding to the motion for summary judgment, plaintiff has not met his burden of showing that Officer Reagan is not entitled to qualified immunity.

Nevertheless, in evaluating whether an official or officer is entitled to qualified immunity, the court undertakes a two-part analysis: "(1) whether, considering the allegations

17

in the light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Elyria*, 502 F.3d at 491 (quoting *Swiecicki v. Delgado*, 463 F.3d 489, 497-498 (6th Cir. 2006)). "The focus of the inquiry is not whether the claimed constitutional right was established on a general level, but whether on the specific facts of the case reasonable officials could disagree on whether the particular conduct under scrutiny violated the Constitution." *Gratsch v. Hamilton County*, 12 F. App'x 193, 202 (6th Cir. 2001) (citing *Anderson v. Creighton,* 483 U.S. 635, 640-41 (1997)).

Plaintiff alleges that he was subjected to excessive force during his arrest by Officer Reagan. Therefore, in the qualified immunity analysis, the court first looks at whether plaintiff's constitutional right to be free from excessive force was violated. Plaintiff's excessive force claim is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989).

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake.

*Id.* at 396 (quoting *Tenn. v. Garner*, 471 U.S. 1, 8 (1985)). An excessive force analysis requires evaluating "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The reasonableness is judged from the perspective of the officer on the scene not with 20/20 hindsight. *Id.* The standard is objective

as "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citations omitted).

The record indicates that plaintiff himself created the situation that led to the eventual use of the taser by not placing his hands behind his back when instructed to do so. Instead, he put his right hand in his pocket and removed it with a clenched fist. This circumstance presented a dangerous situation for the arresting officer who at that point did not know whether the plaintiff had a weapon concealed in his hand. Officers have a right and need to protect themselves, and officer safety must be considered in a situation like this one.

Plaintiff was also responsible for the escalation of the level of force used by Officer Reagan because of his continued refusal to open his hand in spite of instructions to do so. Plaintiff's contention that he could not open his hand because the handcuffs were too tight is illogical. Plaintiff placed his hand in his pocket and removed it with a fist before he was handcuffed, and was given the opportunity to open his hand before he was tasered. However, he refused to cooperate.

While plaintiff says he received a broken wrist, there is no proof in the record of exactly how or when he received the broken wrist. There are no medical records explaining the injury. Plaintiff testified he does not know how the officers got his hand open because he lost consciousness. He also stated in his citizen's complaint that he lost

19

consciousness and "when I awoke I was at the Blount Memorial Hospital." All plaintiff offers is that he was handcuffed and had a broken wrist, which could have been the result of a fall or something other than "excessive force."

The court finds that the actions of Officer Reagan were objectively reasonable and that there was no excessive force used to arrest plaintiff. When a suspect, who an officer is trying to handcuff, places his hand in his pocket and brings out a clenched fist, a dangerous situation is immediately created. When plaintiff would not comply with the requests to open his hand, the officer had to escalate the force used in order to find out what plaintiff was concealing in his hand, which could have been a weapon. As noted above, plaintiff initiated the force that was ultimately used, and he is also responsible for the escalation of the force used because of his continued refusal to open his hand. Plaintiff admits he did not comply with Officer Reagan's requests and the requests of the other officers. The witnesses on the scene also corroborate that fact. Officer Reagan had his safety, the safety of the plaintiff, and the safety of those who had gathered at the scene to consider when deciding on the level of force necessary to subdue plaintiff. Accordingly, because there was no excessive force, there was no constitutional violation. Since there was no constitutional violation, there is no need to proceed any further with the qualified immunity analysis. Summary judgment in favor of Officer Reagan is appropriate.

D. <u>Blount County Official Defendants'</u>
<u>Motion for Summary Judgment</u>

Plaintiff also has not responded to this motion for summary judgment. However, the court has examined whether the movant has met his initial burden of demonstrating that no material issues of fact exist and whether judgment as a matter of law is appropriate.

The court first observes that in paragraph 5 of the complaint plaintiff refers to unnamed, unknown officers of the Blount County Sheriff's Department. For the reasons discussed above, those defendants will be dismissed.

The official capacity claims against Officer Reagan and Sheriff Berrong will be dismissed as these are the same as claims against Blount County, which is a defendant in this lawsuit. *Kraemer*, 189 F. App'x at 366.

### Excessive Force Claim

The court has found that there was no constitutional violation for excessive force when plaintiff was arrested by Officer Reagan. Absent an underlying constitutional violation, plaintiff cannot hold Blount County liable for an excessive force claim under § 1983. *Jones v. City of Cincinnati*, 521 F.3d 555, 560 (6th Cir. 2008) ("A municipality cannot be held liable under § 1983 absent an underlying constitutional violation by its officers.").

Nevertheless, plaintiff has also failed to present any proof whatsoever that Blount County's policies regarding the use of force are unconstitutional or that the county

had a policy or custom of employing excessive force against arrestees. Plaintiff has presented nothing beyond the conclusory allegations in the complaint. This is insufficient at the summary judgment stage. *Johnson*, 119 F. Supp. 2d at 739; *Liberty Lobby*, 477 U.S. at 257.

## Lack of Medical Care

Plaintiff alleges that he did not receive adequate medical care. Plaintiff was a pretrial detainee, and the Eighth Amendment does not apply to pretrial detainees. *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003) (citing *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985)). However, "the eighth amendment rights of prisoners are analogized to those of detainees under the fourteenth amendment, to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial." *Roberts,* 773 F.2d at 723. "In the context of medical care for prisoners and detainees, it is well established that 'deliberate indifference to a prisoner's [or detainee's] serious illness or injury states a cause of action under § 1983.'" *Weaver,* 340 F.3d at 410 (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)); *see also Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005).

Plaintiff's § 1983 claim alleges that he was not given reasonable medical care. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Id*. at 104-05. The Supreme Court in *Farmer v. Brennan*, 511 U.S. 825 (1994), defined "deliberate indifference."

> In *Farmer*, the Court held that a prison official
> acts with deliberate indifference when he acts
> with criminal recklessness. This state of mind
> requires that the official consciously disregar[d] a
> substantial risk of serious harm. Thus, a showing
> of deliberate indifference requires a showing of
> the official's actual awareness of a substantial risk
> of serious harm.

*Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994) (internal quotation marks and citations

omitted). An Eighth Amendment claim requires a showing of some intent on the part of

officials. *Id*. at 127. "[T]he required state of mind is wantonness," the meaning of which

depends on the type of conduct involved. *Id.* at 128.

There is simply no proof in the record that any defendant demonstrated a

"deliberate indifference" to plaintiff's medical needs. Plaintiff became unconscious at the

scene of the arrest and was transported to the hospital where he was treated. There are no

medical records, so there is no information concerning what injuries were treated. Plaintiff

was then transported to jail. After he was released on bail, he was informed through the

Sheriff's Office that he needed to return to the hospital for additional treatment on his wrist.

Plaintiff testified he had a broken wrist. The record is void concerning what treatment

plaintiff did or did not receive concerning this injury. Clearly, there is no proof at all that

plaintiff had serious medical needs that were consciously disregarded by any Blount County

personnel. This claim has no merit.

23

**Plaintiff's Remaining Claims**

Plaintiff has also alleged in the complaint various claims regarding inadequate investigation, failure to train, inadequate supervision, and negligent hiring. Again, plaintiff has offered nothing at this point other than the bare and conclusory allegations in the complaint. These are not sufficient to overcome a properly raised and documented motion for summary judgment. *Johnson*, 119 F. Supp. 2d at 739; *Liberty Lobby*, 477 U.S. at 257. These claims, therefore, will be dismissed.

## E. State Law Claims

As determined above, all of the claims brought pursuant to § 1983 will be dismissed as to all defendants. No claims arising under federal law remain in this action. To the extent plaintiff has asserted claims arising under state law against the defendants, those claims will be dismissed in accordance with 28 U.S.C. 1367(c). The court's decision to decline the exercise of supplemental jurisdiction over any remaining state law claims is an appropriate exercise of its discretion. 28 U.S.C. 1367(c); *Wexley v. Mich. State Univ.*, 821 F. Supp. 479, 487 (W.D. Mich. 1993).

24

IV.

*Conclusion*

Accordingly, for the reasons set forth herein, all of the motions for summary judgment pending before the court will be granted. All of the unknown, unnamed officers referenced in the complaint will be dismissed. All of the state law claims will be dismissed pursuant to 28 U.S.C. § 1367(c). An order consistent with this opinion will be entered.

ENTER:

_____s/ Leon Jordan_____
United States District Judge